Good morning. Stephen Montoya here on behalf of the appellant, Chris Moorhead. You know, I've been doing this for almost 30 years, and I'm still always anxious when I come before this court. I'm less anxious, however, in this case, because I feel the facts are especially clear. And I also feel, having reviewed most of the case law of this court regarding the issue of direct evidence of a discriminatory or retaliatory intent, that the court's case law regarding that is relatively clear, especially when applied to the facts of this case. This is an interesting case. It does span over many years. However, let's start with the clearer part of the case first, because the clearer part of the case really takes place in a much more limited timeframe, and that is the timeframe of late 2011 and early 2002. It really starts or becomes important in July of 2011, because something important happened in the month of July 2011, namely, my client had a birthday. She turned 60 years old. But before that, for months, and after that for months, her direct supervisor, who became her direct supervisor in late 2011, and who also obtained the authority to terminate her when he was promoted from chief merchandising officer to chief operating officer, that would be Jay Chopra, he became my client's direct supervisor with the authority to terminate in late 2011 when he was promoted to CEO. However, before that, he was my client's direct supervisor. She also reported at that time to the owner and founder and CEO of High Health, who passed away in January of 2012, and that was Mr. Simon Chalpin. Ms. Moorhead started working as a buyer, having decades of experience with High Health way back in 1995. She didn't have a perfect record starting back in 1995. She was placed on an improvement plan, which she satisfied in 1997, and she was actually promoted by Mr. Chalpin to the position of senior buyer in 1998. She was never demoted from that position of senior buyer, nor was she ever suspended. She was placed upon a performance improvement plan before she was promoted, and that was in approximately 1997. But she continued to do well, continued to get bonuses, got a few raises. But when she started to approach her 60th year, her direct supervisor, Mr. Chopra, started to make remarks. And I think that the marks were especially important because all of the marks had two things in common. They all prefaced the substantive remark with a comment regarding her age, and they all followed with a remark criticizing her work performance and linking her work performance to her age. For example, I know you're older, but you need to come into the 21st century. Quote, I know you've been around a long time and you're older than the other buyers, comparing her to her younger peers, but you should still be able to come up with some new ideas. Once again, I know you're older than the other buyers, but that shouldn't stop you from being innovative and creative. Now, remember, age discrimination is just another form of discrimination. The same rules that apply under Title VII apply in age discrimination cases. The same rules that apply under Section 1981 apply to age discrimination cases. Let's analyze these in the general context of discrimination. Well, maybe you could just zero in on the point that you started with, which is that you contend those statements are direct evidence. Yeah. And I guess I'm not inclined to agree with that, so let me hear what you have to say on that. Yes, Judge Watford. I think they're direct evidence of discrimination. Suppose a purple person, someone with purple skin or green skin, was suing under Title VII for discrimination based on color. I know that you're a green person, but you still need to come into the 21st century. I know that you're a Mexican person, but you still should be able to come up with new ideas. I know that you're a woman, but you still have to be innovative like your male peers. If we were to substitute the remark regarding Ms. Moorhead's age with a remark regarding her color or her religion or her gender, I think that this would be an easy case, and I think it's still an easy case once you do that. Yes, Judge Watford. Are you having trouble hearing me? Not only you, Judge. I'm a little hard of hearing, and I'm struggling. Okay. Yeah, no, I'm just trying to talk as much as I can into the microphone. Thank you. The acoustics are not good in this room, unfortunately. Thank you. So I certainly agree with you that that evidence is helpful for your client's case, but I'm just focusing on the distinction between direct evidence and, I guess, circumstantial or indirect evidence. Well, and here's why. Because why don't you just tell me that my understanding of the definition of direct evidence is that it's evidence from which no inference need to be drawn. It's just you, if you believe the statement, you know that the reason for the firing was the protected ground. And each of those statements, you do need to draw an inference between what was said and then the ultimate reason for the firing, don't you? I don't think so, Your Honor, respectfully. And I'll tell you why. Each of these statements go to the allegedly defective nature of Ms. Moorhead's work performance. And the alleged defective work performance is the very reason why she was fired for deficient work performance. She was fired for not being innovative. She was fired for not keeping up. And each of these statements links her age explicitly with her failure to keep up her poor work performance. And, Your Honor, that is under this Court's case law, in my view, direct evidence of discrimination. I'll give you a couple of examples. In cases when we've held that statements about the protected ground are enough on their own, usually it's more of a racial slur or something really inflammatory that has been said. Can you explain how these comments fit into that case law? Yes, Your Honor. The comments are discriminatory. Oh, I've had enough women here. For example, this Court's decision in EEOC v. Boeing, that's really not a slur, even though it is derogatory. And in EEOC Boeing, interesting, this is a stronger case of direct evidence in EEOC v. Boeing because in EEOC Boeing, the general comment made by the supervisor really wasn't directed to this woman's termination. It was just a general statement that applied to all women, not this particular woman. Moreover, it was even more indirect because not only did it not apply to this particular woman, but it also didn't apply to terminating her. In this case, these remarks applied to this particular woman and her allegedly poor job performance that led to her termination. That's why we think it's a stronger case of direct evidence than EEOC v. Boeing. Here's another case, a relatively famous case for what I do, and that would be Cordova v. State Farm. In that case, you have a supervisor, just one supervisor, who refers to one Mexican, Maldonado, as a dumb Mexican. Had nothing to do with Ms. Cordova. And it had nothing to do with Ms. Cordova's work performance. But nevertheless, the entire panel, in an opinion, as you know, written by Judge Hawkins, said that is direct evidence of discriminatory intent. Dumb Mexican, even though it applied to another Mexican employee in another context, this Court said it was direct evidence of discrimination. Here's a third case, Chuang v. University of California at Berkeley. A research scientist, Dr. Chuang, allegedly wasn't given the same benefits and was pushed out of the faculty. And one of the main decision-makers in reference to the push-out said, hey, we have he made a racial slur regarding Asian Americans, but it wasn't Dr. It wasn't Professor Chuang. It was another professor. But what do you make of the fact that Ms. Moorhead was not satisfying the performance metrics that high health had established for the buyer's department? Well, a couple of things, Judge Feinerman. First of all, it was the alleged discriminator who crafted the performance metrics, and the performance metrics that he crafted only applied to Ms. Moorhead. There wasn't one standard that applied to the three buyers. I didn't get that from the record. It seemed that all three buyers were subjected to the performance metric that looked at how much the gross profits increased year to year. Judge Feinerman, when I sit down, I'll find that portion in the record because it's actually in defendant's statement of facts, and I have it underlined. But when I come up for my reply, I'll recite that to you page and verse. In fact, Mr. Chopra admitted, yeah, the performance metrics were higher for Ms. Moorhead, but in fairness, he did say she had more experience and she got paid more, and plus she was a senior buyer, so the other ones weren't. So she did have a unique metric. It was a uniquely higher metric. There is an innocent explanation, but that's why when you cannot let him make that metric, for example, it would be unfair to let someone who called an employee a dumb Mexican or a dumb green person to make the unique metric for the only green employee on a three-person team. Is there anything in the record about who replaced her? No. However, there is something in the record, interestingly. One of the ladies who didn't perform objectively as well as Ms. Moorhead, when she didn't meet her second performance improvement plan, she wasn't terminated. They found another place in the company for her, unlike Ms. Moorhead. Moreover, this individual, her name was Peggy Bell, instead of being only given two months to come up to snuff, she was given three months. When she did complete the first improvement plan successfully, the second one she didn't complete successfully, and when she didn't complete it, she was going to resign. But instead, Mr. Chopra personally found her another position that she could occupy and consequently save her job. I'd like to reserve the two and a half minutes left for my rebuttal. Yes, you can. Can you please give me record sites for that last proposition you made? Yes, Your Honor. Thank you. You don't have them? No, but when I stand up, I'm going to write them down. I'm going to recite them, both of those record sites, to you. Thank you. Thank you. Let's hear from counsel for the defendant. Thank you. Lonnie Williams on behalf of High Health. I'm going to, unless the panel has questions, confine my comments to the age claim, which was addressed earlier. To the extent the question is whether or not this is direct evidence or not, it is a little different argument than was presented to the court at summary judgment. And you get that a little bit from their brief, but it's a little different. But I'll address that. Here we do not have the type of ridiculous statements that you have in many of the cases that counsel cited. If we give Ms. Moorhead the benefit of the doubt, we have statements that, yes, her age was referenced in terms of younger people. But we also have a history here. And, for example, the record shows, and the district court found, that going back as early as 1997, before anything happened, the record shows she was criticized for her technological skills. And throughout the employment, there are numerous references to her having problems in terms of technology. But it seems like she got promoted. She got raises. It seems like her problems couldn't have been that significant. The issue is not, Judge, the issue is not whether they were significant. The issue is they all predate any alleged ageist statements, because in order to evaluate the direct evidence, you have to put it in context. And that's the reason why it's not direct evidence, because when you look at the statements in the cases counsel cited, these are statements that are offensive. They are jokes. They are negative statements. The one case counsel mentioned where they're laughing about the pronunciation of someone of Asian descent. That is not what we have here. We have three or four comments over a period of time. She alleges that those are just examples of comments that were made to her over and over and over again, right? She has every opportunity to tell the judge on summary judgment what comments were made. It is not the time to withhold and only give examples. But didn't she allege that there were so many of these that she couldn't even remember all the dates and times and examples exactly because they were all of this nature and they were repeated? Yes. There's a difference between not being able to remember when the statements were made versus whether or not statements were made. In other words, a jury or a judge can't consider the fact that she believes there are other, quote, ageist statements that were made that this court or the district court doesn't have the ability to determine whether they're stray comments, whether they are, in fact, direct evidence. In other words, if we don't know what the statements are, then how do we determine whether they're direct evidence? And if we can't determine whether they are direct evidence, then we go to a different analysis, which I believe counsel, even in the briefs and based on his argument, concedes that the McDonnell-Douglas test was not met in this case. Let's just focus on the statements that we do have before us because, obviously, that's what your opponent says, that those statements do constitute direct evidence. Why don't they, given that the let's just take the Cordova case, the statement there which is not even directed at the plaintiff? Yes. And that statement was a direct statement showing bias toward a specific group of people. There's no way to interpret that statement. And as the court mentioned a moment ago, that statement in and of itself shows a bias toward a specific group of people. But these statements here, don't they show a bias toward people who are above a certain age? I disagree, and so did the district court. These statements. Well, we're on de novo review, right? So it doesn't really matter what the district court thought? You are correct. Let me put it differently. When you look at the case law coming from this circuit, you will not find any case that I know of that I can find where statements such as these were found to be direct evidence as opposed to stray comments because they don't go to the heart. The statement in itself doesn't lead you to say this person has a bias toward people of a certain age. Well, they're definitely not as inflammatory as the statements in some other cases. But why talk about age at all? I mean, I was trying to think of exactly what kind of epitaph there would be for age. I mean, I'm not sure exactly what word would have been inflammatory in the way that some of the words in other cases were inflammatory in this context. It seems like at least the employer was mentioning age in a context where it doesn't seem like it needed to be mentioned at all. And outside this courtroom, I would probably agree with you. But if you make that jump that any statement related to a protective group gives you direct evidence, then we're basically throwing away all of the case law that make the distinction between stray comments that don't get you direct evidence and those comments which courts all across the country have said are direct evidence. But we have more than that here. It isn't just stray comments about age. It's stray comments suggesting that because of her age, she can't do her job. I know you're older, but you need to come into the 21st century. What that's conveying is you're old, you can't do this job anymore because you're old. I do not believe – I believe that comment in and of itself does not raise to the level of direct evidence. And I believe the district court in considering that – well, let me just be clear. To the extent – Excuse me. I'm sorry. The desk is falling apart. It's old. A major piece of wood just fell on my leg, but everything is fine. We do not believe that these comments – Why not? Because they do not show a direct negative implication of someone who is ageist. They are quite different than saying you are a dumb ex. You cannot speak. How about this? I know you've been around for a long time and you're older than the other buyers, but you still should be able to come up with some new ideas. What that's saying is you're old, you have old ideas, you can't come up with new ideas. You stink because you're old. In all due respect to that, I disagree. I think that says that you've been here a while, but you need to continue to grow. You need to continue to perform as others are performing. And we can differ on that. How about this? Other people in the company, as well as myself, look around and wonder whether or not you can keep up with the other younger buyers. The younger buyers. Which is you're old, so you can't keep up with the other younger buyers. And, therefore, it's not that you're a bad employee. It's you're a bad employee because you're old and not young. That's one interpretation. Another would be that we have three buyers, which they did at the time, and you're not meeting the goals and responsibilities that have been laid out. I think you just admitted that summary judgment is not appropriate because you said that's one interpretation. No, no. Which means that there's another interpretation, and then it's for the jury to decide which interpretation is correct. I disagree. What I've said is that the statement in and of itself does not lead to the direct evidence standard. It doesn't matter. It's circumstantial evidence. Just because he doesn't have direct evidence doesn't mean that summary judgment is granted. Summary judgment can be forestalled based on circumstantial evidence. Absolutely. What I am pointing out is that if the statement in itself leads, can lead to a situation where it gives credence considering everything else, we're not in the direct evidence standard. We're in the analysis under McDonnell Douglas. Again, these statements are not close to what we find in the Ninth Circuit where you have found direct evidence. And that's really what the age case is about here, is if you find direct evidence, no one's going to argue that summary judgment would be appropriate, because I have no argument there. But so this is a different case. It's true we don't have a case that has statements exactly like this, but why isn't it enough to have statements where you're inserting a description of a protected ground that is totally irrelevant to the comment about the work that's being made? You would increase the likelihood of direct evidence, and you're changing the case law, because comments like this in the district court in an analysis cited numerous cases, these are stray comments. These are comments that you can feel differently about. They are not ageist comments in that sense. But if this Court believes any comment that you make where you insert someone's age, or in many of these comments, excuse me, you refer to younger employees is enough, then you are asserting, in all due respect, a different standard than the Ninth Circuit has set forth before. Certainly you can. So are you arguing, are you relying on age being different than other protected grounds? I mean, if someone was saying, you may be Mexican, but I want you to keep up with the white people, I can't imagine that we wouldn't say that's direct evidence. But that's not what was said. What was said is you've been here a long time, and you're not keeping up with the younger employees. But that's not what was said. What was said is that you're old. I mean, you've been around a long time sounds like a way of saying you've been alive a long time. Well, see, that's the difference between direct evidence, because saying you've been around a long time simply means, could also simply be stated, you are the most tenured person here. You could be 39 and have been at somewhere for 20 years, as opposed to someone who had only been there five years. We're not, I'm not saying these are great comments, but what I'm saying is there's a distinction in the law between whether or not these comments, in and of itself, in an age case, get you to a jury, as opposed to going through the McDonnell Douglas standard and making that determination. How about this statement, a hypothetical statement? I know you're Mexican, but you still need to keep up with the Asian buyers. If not, this job might not be for you. Can we affirm summary judgment if that statement was made? One time, yes. Why is that? Because I don't think one statement like that, under the law of the Ninth Circuit, is direct evidence of discrimination to get you to a jury. How about this? How about this one? Other people in the company, as well as myself, look around and whether or not you can keep up with the white buyers, said to a Mexican. Can we grant summary judgment if that statement was made? Single statement, yes. How about together with the other statement? When you start getting multiple statements like that, that might be direct evidence. Okay. Well, we have two. You're reading that statement quite differently, and there's a difference in the sense that when you're talking about race, when you're talking about race in that context of your example, there's no mistaking. There's no tenure of employee. There's no you can have worked 10 years versus 2 years in making that distinction. But when you're talking about age, there is. And there is a difference. And, no, I don't agree that you can simply substitute the word age or older and younger for white, black, Mexican. And it's the same thing. So you are making an argument that age is different somehow. No, I'm making an argument that the statements in the context, because when you say to an employee, you're not acting like the white employees, that you as a black man aren't performing like the white employee, there's no way around that. There is no other thing that can be said. We're talking about a situation where if you have workers who have worked for a long time, who are 38, who someone else who may have been there for 3 years and is 45, those statements could also apply to many of those situations. So, yes, I do believe that in the context of the examples of switching of the younger versus older or tenured versus white, black, Mexican, I do believe there is a difference. And I believe there's a difference simply because it is a different situation. And it is a different act, in fact, in terms of that. So I do think it is different. I believe the analysis that you have to apply is McDonnell-Douglas. And I think in that situation we presented significant evidence that she was not performing at the same level. And contrary to what counsel said. But she alleges that these goals that were set for her were essentially just a pretextual way to fire her. Well, the record shows, and the record can be found at, and these were all admitted. And one of the keys is that the district court found that these issues were not in dispute. And those can be found in plaintiff's response to our statement of facts, 45 through 76. And it's important because she admits that the standards were provided, they were objective, and they were applied to all employees. Whether or not she liked the standards, whether or not she believed the standards were fair, is not relevant. Unless there's some evidence that these standards, although they apply to everyone, were put in place simply to get rid of her and there's no argument. She admits all of that. The district court found that those facts were not disputed. And I do not believe there will be any citations to the contrary. So it is different whether you have objective standards where you've got to meet the numbers. And so you're not doing different things for different people. But the numbers were different for the different employees. The numbers weren't different. The number of products that were assigned to her were different. The standards were the same. But because of her tenure, because she was a senior buyer, she had more. She was also paid more. And so that distinction without more doesn't tell us anything. And she can't simply come in, nor can any employer, and say, I don't like the way you have assigned me my tasks as long as the tasks have been assigned objectively. And in this case, they were assigned objectively as opposed to based on you have to go do something and the other employees who are of a different class do not have to do that. And here the record is not in dispute that they were objectively assigned in terms of that. I believe ‑‑ I'm not sure that this tells me I'm over my time. MR. KOLBERG. You're over now. Do you have a concluding statement you want to make? The concluding statement is I think the case law answers this question. The Court asked some very interesting questions where this is direct evidence. I believe the precedent in this Court shows it's not because the case law and the ones that my worthy opponent references aren't even close. You cannot compare those statements to what we have here. And based on that, using the other standard, the district court summary judgment should be affirmed. Thank you. Thank you, counsel. You have some time for rebuttal. Thank you. I'm looking at the excerpts of record. This is ER page 217, and that's from volume three. It's paragraph 18 of the defendant, the appellee's statement of facts to the district court. So this isn't coming from the plaintiff. This is coming from the defendant's counsel, and it's actually a quote from Mr. Chopra. What's the page number? Judge Wofford, that is page 217, ER 1.17, lines 14 through 17. I thought you said 217. I said 217. If I misspoke, I apologize. Is that 217 is the right number? Yes, ER 217. Okay. Paragraph 18, lines 14 through 17. Mr. Chopra testified, quote, Now, as a buyer, I could have a greater amount of responsibilities, and plaintiff, being a senior buyer, had the greater responsibilities of having a bit more categories and a bit more gross profit dollars than Peggy, as an example, who in salary and her position was not the same. So they admit that the ---- That doesn't show what you say it shows. That shows the amount of gross profits. It doesn't show that a different metric in terms of the increase in gross profits year to year was different. Well, it does show that the gross profit metric was different between Peggy and Chris, and the amount of product categories is indisputably different. Chris had almost twice as much product categories than any other buyer, and she generated almost as much as both of the other buyers combined. So it does show, Judge Feinerman, a different metric. No. The metric that the defendant says that it used is you look at the increase in profits year to year, the percentage increase in profits, and I was expecting you to show me something where a greater percentage increase was expected of Morehead than of the other two, and this doesn't show it. Well, it does show more categories, and it does show more gross profit dollars than Peggy. But that wasn't the metric that they used. Well, according to Mr. Chopra, that's the only metric. You say that that's not the metric used. However, that's the only metric of record that you can find to determine what was used. If that metric wasn't used, I think you have to conclude, Judge Feinerman, that that was the metric used because that's the only metric articulated in the record. That's the only metric articulated in the one paragraph of the record that you're pointing us to. Well, I believe that is the only metric pointed in the record. There's no other. You're suggesting there was a different percentage metric or there was a standard percentage metric of increase. That's not in the record. This is the only evidence of record which we are to construe in favor of the moving party, which goes to a point that you made. Here's, I think, a point that the district court forgot. You're supposed to believe the plaintiff's facts as true. And if you take those facts as true, there was a pattern of these discriminatory ageist comments that persisted for a period of months and months. And Ms. Moorhead goes into that in her deposition testimony. That's on ER page 139. How many times, quote, I know you're older, but you need to come into the 21st century. Yes. How many times did Mr. Chopra say that? Once a month for years. Okay. Twenty times maybe. I know you've been around a long time and you're older than the other buyers, but you should still be able to come up with some new ideas, unquote. Yes, he did. How many times did Mr. Chopra say that? Something like that. Either that exactly, something similar to that, again, or at least once a month or at least a year or two. So there is a weight of these comments. And on the issue of a different standard for age, that is contrary to this Court's longstanding case law that treats age discrimination the same way that it treats any other type of discrimination. And the language, there are racial epithets for minority groups and for other majority groups, too. There aren't that many epithets for ageist comments. And because direct evidence is so rare, this Court and other courts have commented, hey, most people are not stupid enough to give you direct evidence. That's a reason not to narrowly interpret direct evidence because it is so rare. And when you construe these ageist remarks in Ms. Moorhead's favor, I think that you first have to follow the traditional summary judgment rules. Take them as true and construe them in favor of the nonmoving party. If you construe these, which it's easy to do, biased remarks as one way, then they're clearly direct evidence of discrimination. But remember, this Court has also said that any evidence of direct discrimination precludes summary judgment. But then I'm almost done. I see my time's out. But you're over your time. If you have a concluding statement, go ahead. This Court has also repeatedly said for decades that because discrimination goes to motive, that any evidence of discrimination precludes summary judgment. So applying this Court's traditional rules, we believe that although this case might be a tough case to take to a jury, this case was not a summary judgment case. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Watford, Friedland, Feinerman